**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**MARIA CASASOLA,** *

*Plaintiff,* *

v. * Civil Case No: 1:23-cv-02800-JMC

**JOLLY ROGER RIDES, INC.**
**d/b/a JOLLY ROGER AMUSEMENT** *
**PARK,**

*

*Defendant.*

* * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Maria Casasola, filed the present lawsuit against Defendant, Jolly Roger Rides, Inc. ("Jolly Roger"), on October 17, 2023, asserting three causes of action based on injuries Plaintiff allegedly sustained while using an inflatable two-person tube on a flume ride at Jolly Roger Splash Mountain Water Park in Ocean City, Maryland ("Splash Mountain"): negligence (Count I); strict liability (Count II); and breach of express and implied warranties (Count III). (ECF No. 1). Defendant filed a partial Answer to Plaintiff's Complaint on November 22, 2023, followed by an Amended partial Answer on November 29, 2023. (ECF Nos. 9, 11). Presently before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Complaint ("the Motion"). (ECF No. 10). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion will be denied.

## I. BACKGROUND

Plaintiff and her mother went to Splash Mountain on August 18, 2021. (ECF No. 1 at 3).[1] The pair shortly thereafter decided to partake in a "flume ride" that Defendant branded and referred to as the "Master Blaster." *Id.* Riding the Master Blaster requires patrons—such as Plaintiff—to use inflatable tubes that may be retrieved at the base of the ride. *Id.* Plaintiff and her mother went to the base of the ride to retrieve a two-person inflatable tube but noticed that there were "very few two-person inflatable tubes left." *Id.* Plaintiff nevertheless selected one of the available two-person inflatable tubes and proceeded to enter the Master Blaster line with her mother. *Id.* at 4.

Plaintiff noticed while standing in line that the two-person inflatable tube she selected was "somewhat underinflated." *Id.* Conceding that she is no "expert in tube inflation," Plaintiff asked a nearby Jolly Roger attendant whether the underinflated tube she selected was appropriate and safe for use. *Id.* The Jolly Roger attendant briefly inspected the tube before indicating to Plaintiff that the tube was appropriate and safe for use. *Id.* Relying on the Jolly Roger attendant's appraisal of the tube, Plaintiff and her mother continued to wait in line before eventually occupying the tube and "push[ing] off" to begin the ride. *Id.*

The inflatable tube seemed to have less support than usual while Plaintiff and her mother were on the ride. *Id.* at 4–5. Specifically, Plaintiff noticed that "She could feel the ribs or joints in the side" and that "she sat lower than normal" while using the tube. *Id.* Plaintiff was not worried, though, because the Jolly Roger attendant assured Plaintiff that the tube was safe. *Id.* at 5. Plaintiff's initial concerns proved to be well-founded. When Plaintiff and her mother reached the

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

end of the flume ride, "the underinflated front of the tube entered the water in the landing pool and deformed or buckled upward instead of maintaining its usual and expected shape." *Id.* The upward buckle caught the water and the forward momentum from the ride pushed the front of the tube sharply downward, resulting in Plaintiff's feet being slammed down against the bottom of the pool unexpectedly. *Id.* Plaintiff's forced contact with the bottom of the pool allegedly caused her to suffer "serious and permanent injuries," resulting in the case *sub judice*. *Id.*

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

## III. ANALYSIS

### A. Count II—Strict Liability

Defendant's Motion first seeks to have Count II of Plaintiff's Complaint dismissed for failure to state a claim upon which relief may be granted. (ECF No. 10-1 at 2–4).[2] Specifically, Defendant argues that Plaintiff has not adequately pled the elements of a strict liability claim based on a product defect such that Count II of Plaintiff's Complaint should be permitted. *Id.*

"To recover on a claim of strict liability" claim in Maryland,

> [A] claimant must allege and prove that: (1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Collins v. Li*, 176 Md. App. 502, 578 (2007).[3] Defendant argues that Plaintiff fails to sufficiently plead strict liability because "Plaintiff fails to allege any facts that there was a sale of a good or that a seller was involved in any transaction." (ECF No. 10-1 at 3). More broadly, Defendant asserts that Maryland does not recognize strict liability claims against *lessors* of goods—such as Defendant (allegedly)—and that only *sellers* may be responsible under a theory of strict products liability. *See id.* ("The Plaintiff does not assert that Defendant was a seller of the inflatable tube or that Plaintiff was a buyer of the inflatable tube. Thus, Plaintiff has failed to plead the first element of Strict Liability to survive a motion to dismiss . . . .").

---

[2] Defendant asserts that Bayshore Development Corporation is the proper Defendant in this case, but that Defense Counsel represents both entities. (ECF No. 10-1 at 1 n.1). However, Defendant has not moved to substitute the parties in this case or otherwise made any argument based on Plaintiff's alleged misidentification.

[3] "Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit." *Havtech, LLC v. AAON Inc*., No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022). Regarding tort claims under Maryland's choice of law rules, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Thus, the Court applies the substantive tort law of Maryland because the material events giving rise to the Complaint occurred in Maryland.

Defendant's argument is based on two specific cases, both of which are unpersuasive. Defendant first relies on *Bona v. Graefe*, 264 Md. 69 (1972). In *Bona*, the plaintiff sustained injuries from a runaway golf cart before suing the owner of the cart, the golf professional at and manager of the golf course who subleased the cart to another, and the individual operating the cart at the time of the accident. *Id.* at 71. The plaintiff alleged that the owner of the cart and the manager who leased the cart from the owner (but not the individual who subleased the cart from the manager) were liable for his injuries under a theory of strict liability. *Id.* A directed verdict was entered in favor of the owner and manager on that issue. *Id.* In affirming that directed verdict, the court opined that strict products liability "is directed at one who sells a product which, because of its defective condition, is unreasonably dangerous to the user, and reaches the user without substantial change in the condition in which it is sold," but that such a cause of action "is not applicable to a lessor." *Id.* at 77. That court expressly declined to adopt the principles of strict liability espoused in 2 Restatement, Torts 2d § 402A (1965), but nevertheless noted that § 402A was not applicable to lessors of property even if the court decided to adopt § 402A. *See id.* at 76–77 ("Consequently, the liability of the lessor of a chattel, as distinguished from that of a vendor, if it is to be imposed at all in Maryland, must be imposed in a tort action for negligence . . . we think[] that s 402A is not applicable to a lessor."). Defendant also cites *Speyer, Inc. v. Humble Oil & Refining Co.*, 403 F.2d 766 (3d Cir. 1968), for the same proposition, which the court in *Bona* relied on in concluding that § 402A does not apply to lessors. *See Bona*, 264 Md. at 77 ("*Speyer* . . . held, quite properly we think, that s 402A is not applicable to a lessor.").

Plaintiff responds by identifying that Maryland adopted § 402A in *Phipps v. General Motors Corp.*, 278 Md. 337 (1976). *See Phipps*, 278 Md. at 353 ("Therefore, we adopt the theory of strict liability as expressed in s 402A of the Restatement (Second) of Torts."). Plaintiff also illustrates

through citations to numerous other state and federal courts that the "vast majority" of courts which have considered this question have applied strict liability principles to allow lessors to be held strictly liable for injuries resulting from leasing a defective product. (ECF No. 13). However, Plaintiff presents no Maryland case—and the Court has found none—that expressly holds that both sellers and lessors are interchangeable in applying the above elements of a strict products liability claim to lessors of chattels, *i.e.*, that a lessor is equally subject to strict products liability resulting from alleged product defects such as the one involved in this case. It is thus the Court's prerogative to determine how Maryland's highest court would likely rule on the issue, considering analogous Maryland laws, court opinions, and persuasive authorities. *See, e.g.*, *Bostick v. Smoot Sand & Gravel Corp.*, 154 F. Supp. 744, 757 (D. Md. 1957), *judgment rev'd on other grounds*, 260 F.2d 534 (4th Cir. 1958) ("Unfortunately, however, the Maryland Court of Appeals has not passed upon the critical points in this case, so that this court must endeavor to ascertain and apply that law which it believes the Maryland Court of Appeals would (or will) hold to be applicable."); *Adams v. Star Enter.*, 51 F.3d 417, 425 (4th Cir. 1995) (interpreting application of Virginia state law despite Virginia's highest court having yet to specifically address the issue).

After thoroughly reviewing all relevant materials, including both Maryland and non-Maryland case law and interpretations of strict products liability, the Court concludes that Maryland's highest court would likely find the distinction between "sellers" and "lessors" for purposes of strict products liability to be artificial in cases like this. Beginning outside of Maryland, there is an abundance of case law—including from our sister courts in the Fourth Circuit—indicating that state courts have largely eroded the distinction between sellers and lessors for purposes of strict products liability, or at least that the modern trend is as such. *See, e.g.*, *Kalumetals, Inc. v. Hitachi Magnetics Corp.*, 21 F. Supp. 2d 510, 515 (W.D. Pa. 1998)

(“Pennsylvania courts apply section 402A to bailors and lessors as well as to sellers.”); *Malloy v. Doty Conveyor*, 820 F. Supp. 217, 219–20 (E.D. Pa. 1993) (“On its face, § 402A applies only to sellers of defective products. However, Pennsylvania courts have extended the definition of seller to include all suppliers in the chain of distribution, whether retailers, partmakers, assemblers, owners, sellers, *lessors*, or any other relevant category.”) (quotation omitted) (emphasis added); *Ghionis v. Deer Valley Resort Co.*, 839 F. Supp. 789, 794 (D. Utah 1993) (“[Defendant] argues that [plaintiff’s] claim for strict products liability should be dismissed because it was not a manufacturer or seller of a product . . . while no technical ‘sale’ of equipment to [plaintiff] took place, the court is persuaded that the Utah courts will extend its rulings on strict product liability to apply to lessors of products such as [defendant].”); *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 152 (N.D.N.Y. 2020) (“A strict products liability claim arises against a manufacturer, a retailer, *or a commercial lessor of a product* if (1) the product is defective, and (2) the defect caused plaintiff’s injury.”) (quotation omitted) (emphasis added); *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1139 (D. Haw. 2009) (noting that Hawaii substantive products liability law applies to those “who sell[] or lease[] a defective product”); *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 390 F. Supp. 3d 964, 971 (W.D. Wis. 2019) (acknowledging the Wisconsin Supreme Court’s conclusion that “a lessor, like a seller, bears responsibility for putting a defective product into the stream of commerce” and rejecting defendant’s argument that “it could not be strictly liable because it was not a seller” of the product); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978) (“The doctrine of strict liability as enunciated in the Restatement (second) of Torts s 402A has been adopted as the rule in Texas . . . Although phrased in terms of sellers, it is not necessary that the defendant actually sell the product, but only that he be engaged in the business of introducing the product into channels of commerce.”); *Wright v. Newman*, 735

F.2d 1073, 1077–78 (8th Cir. 1984) ("Missouri has adopted the substantive law on strict liability set forth in Section 402A, *Restatement (Second) of Torts* (1965) . . . Missouri, *like most states*, has extended the class of commercial distributors liable under 402A beyond sellers and manufacturers to commercial lessors and bailors . . . Missouri courts, among others, have noted that the same policy considerations that justify imposition of strict liability upon sellers apply to commercial lessors and bailors.") (emphasis added in second italics); *Casciano v. JASEN Rides, LLC*, 109 F. Supp. 3d 134, 138–39 (D.D.C. 2015) (noting that the D.C. Court of Appeals had not addressed whether strict liability extends to lessors of products before concluding that it does and remarking that such a conclusion "accords with the majority of courts that have considered the matter"); *Price v. Shell Oil Co.*, 466 P.2d 722, 726–27 (Cal. 1970) ("[W]e are of the opinion that the doctrine of strict liability in tort should be made applicable to bailors and lessors of personal property in the same manner as we have held it applicable to sellers of such property."); Allan E. Korpela, *Products Liability: Application of Strict Liability in Tort Doctrine to Lessor of Personal Property*, 52 A.L.R.3d 121 (2015) (collecting cases and finding that "[m]ost of the jurisdictions which have adopted the proposition that persons engaged in the [business of] manufacturing or selling products are liable for injury or damage caused by a defect in the product, notwithstanding due care was exercised by the manufacturer or seller, have also . . . applied the doctrine to commercial lessors of products").

The Court finds it quite persuasive for Plaintiff that the above string cite could easily span several additional pages with citations from across the nation.[4] In fact, Plaintiff even posits cases that are factually similar to this one in which courts have found that waterparks may fall within § 402A's scope. For instance, the Court of Common Pleas of Pennsylvania held in *Coppersmith v.*

[4] Plaintiff's opposition additionally cites to cases analyzing strict products liability law from Rhode Island, Florida, the Virgin Islands, Montana, Maine, Ohio, and Illinois to the same effect. *See* (ECF No. 13 at 10–13).

*Herco, Inc.* that a plaintiff's cause of action for strict products liability could be maintained against a defendant waterpark, despite that defendant's argument that § 402A did not apply since the waterpark was not a conventional seller, when that defendant provided a raft which was allegedly defective. 29 Pa. D. & C. 4th 73, 75–79 (Com. Pl. 1996); *see also id.* at 77 ("We are not convinced, that given this broad interpretation of the meaning of 'seller' or 'supplier' under section 402A, that the defendant, as a matter of law, could not be deemed to be a 'seller' or 'supplier' for the purposes of section 402A, particularly in light of the absence of appellate rulings on the viability of section 402A actions vis-à-vis amusement rides and their operators. Defendant is in the business of supplying the consuming public with rides on its amusements, specifically, in this case, a ride on the Slidewinder which involved putting the plaintiff in possession of a raft which was allegedly defective. Defendant thus might be considered the supplier of a product which could endanger the public."); *Casciano*, 109 F. Supp. 3d at 138–39 (permitting strict liability claim against defendant for injuries sustained during a guided Segway tour in which defendant distributed the Segway for purposes of the tour after concluding that strict liability applied to lessors of products, despite the defendant having never designed, constructed, marketed, or sold the Segways).

Turning to relevant Maryland authority, Maryland's highest court noted the following policy rationales underlying strict products liability claims when it adopted § 402A in *Phipps*:

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

> We find the above reasons persuasive. In our view, there is no reason why a party injured by a defective and unreasonably dangerous product, which when placed on the market is impliedly represented as safe, should bear the loss of that injury when the seller of that product is in a better position to take precautions and protect against the defect. Yet this may be the result where injured parties are forced to comply with the proof requirements of negligence actions or are confronted with the procedural requirements and limitations of warranty actions. Therefore, we adopt the theory of strict liability as expressed in s 402A of the Restatement (Second) of Torts.

*Phipps*, 278 Md. at 351–52. The Court believes that permitting Plaintiff's strict liability claim to proceed accords with these rationales. Defendants like Jolly Roger are far better equipped to ensure that the products they provide to patrons are safe for use, like ensuring that the inflatable tubes provided to patrons for use during Defendant's rides are free from defects and hazards. And Defendants like Jolly Roger can protect themselves through contractual indemnity arrangements with manufacturers, suppliers, and other sellers of products from whom they purchase or, barring that, can send liability back up the chain of distribution through litigation under contribution or indemnity theories.

Defendants like Jolly Roger can be fairly said to "market" such products to the general public when requiring that patrons use those products to utilize Defendant's amenities, and consumers like Plaintiff are entitled to the maximum amount of protection from those who provide such products. This is further buttressed by the facts of this case, where a Jolly Roger attendant affirmatively represented to Plaintiff that the defective inflatable tube was safe for use. Although neither the parties nor this Court have found a case in which Maryland's highest court addresses this specific issue, there are Maryland cases suggesting the viability of strict liability claims against potential lessors of products like Defendant as early as a mere three months following Maryland's adoption of § 402A in *Phipps*. *See Gardenvillage Realty Corp. v. Russo*, 34 Md. App. 25, 38–39 (1976) (noting that "The Court of Appeals has recently adopted the theory of strict liability in the manufacture and sale of defective products" before acknowledging that strict liability "has also

been applied to lessors of a product") (citing *Cintrone v. Hertz Truck Leasing*, 212 A.2d 769 (N.J. 1965)). Notably, the court in *Gardenvillage* expressly remarked that "While we decline to decide this case on [the grounds of applying strict liability to lessors of a product] as the question was not raised or argued by either side, it does appear that the Court of Appeals has adopted the policy of protecting the consumers when they are not in a position to protect themselves." *Id.* at 39.[5]

Perhaps recognizing the dearth of case law supporting Plaintiff's argument after Plaintiff submitted her opposition to the Motion, Defendant attempts to raise a new argument in its reply brief that the Court declines to consider. Defendant's ground for dismissal of Plaintiff's products liability claim was predicated solely on the argument that strict liability applies only to sellers rather than lessors. While the Court normally would not include an entire argument section as a block quote, the Court finds it useful to present Defendant's entire argument regarding Count II below:

> Plaintiff appears to allege that Defendant is strictly liable based on a product defect. Specifically, *Plaintiff alleges that Defendant is strictly liable as an alleged lessor and/or bailor of the two-person inflatable tube*, which plaintiff claims was underinflated and defective. This court should dismiss this claim because Plaintiff fails to satisfy the pleading standard for Strict Liability.
>
> For a claim of Strict Liability to survive a motion to dismiss, Plaintiff must adequately plead the following elements:
>
> 1. the product was in a defective condition at the time that it left the possession or control of the seller;
> 2. the product was unreasonably dangerous to the user or consumer;
> 3. the defect was a cause of the injuries;
> 4. the product was expected to and did reach the consumer without undergoing any substantial change in its condition
>
> *Collins v. LI*, 176 MD. App. 502, 578, 933 A.2d 528, 572-73 (2007). The Court of Appeals of Maryland has emphasized that the theory of strict liability does not apply to a lessor. See *Bona v. Graefe*, 264 Md. 69, 77-78 (1972) (holding that the trial court did not err by not permitting the case to go to the jury on the issue of strict liability because strict liability is not applicable to a lessor). See *Speyer, Inc. v. Humble Oil & Refining Co.*, 403 F.2d 766, 772 (3d Cir. 1968) (holding that if the

[5] To be clear, the court in *Gardenvillage* limited its holding "to the adoption of s 424 of Restatement (Second) of Torts." 34 Md. App. at 39 n.2.

> Defendant is not a seller, he cannot be held responsible under a theory of strict liability).
>
> Here, Plaintiff fails to plead Strict Liability to survive a motion to dismiss. Plaintiff fails to allege any facts that there was a sale of a good or that a seller was involved in any transaction. *In fact, Plaintiff explicitly alleges that Defendant was a lessor and/or bailor the inflatable tube*, and that Defendant was merely transferring control of the tube for the Plaintiff to use, and that Plaintiff was expected to return the tube. Compl. ¶ 32. The Plaintiff does not assert that Defendant was a seller of the inflatable tube or that Plaintiff was a buyer of the inflatable tube. Thus, Plaintiff has failed to plead the first element of Strict Liability to survive a motion to dismiss, and therefore, Count I [sic] should be dismissed.

(ECF No. 10-1 at 2–4) (emphasis added). Thus, Defendant's sole argument regarding Count II was that, as a matter of law, Plaintiff's strict liability count failed to state a viable claim because lessors are not subject to strict liability. Defendant even concedes that Plaintiff alleges that Defendant is a lessor and/or bailor of the inflatable tube which injured Plaintiff, yet Defendant chose not to argue the sufficiency of that allegation initially in its Motion. Rather, Defendant argues for the first time in its reply that "Plaintiff fails to plead sufficient facts to show that her use of the inflatable equipment constituted a 'lease' of a good." (ECF No. 17 at 3). Should Defendant have wished to argue that point, it was better suited to do so in its initial Motion as an argument in the alternative rather than surprising Plaintiff with this argument in its reply to which Plaintiff is afforded no opportunity to respond. The Court thus declines to consider this argument. *See Noohi v. Toll Bros.*, No. CIV.A. RDB-11-00585, 2012 WL 70648, at *2 (D. Md. Jan. 5, 2012) ("This Court has previously held that '[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.' Moreover, this Court has also noted that '[c]ourts have broad discretion to decline to consider arguments or issues first raised in a reply brief.'") (first quoting *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006); then quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 (D. Md. 2009)); *Spearman v. City of Annapolis*, No. CV JKB-21-1779, 2021 WL 5909655, at *3 (D. Md. Dec. 14,

2021). Accordingly, the Motion is denied to the extent that it seeks dismissal of Count II of Plaintiff's Complaint for strict liability.

B. Count III—Breach of Express and Implied Warranties

Defendant next seeks dismissal of Count III of Plaintiff's Complaint for breach of express and implied warranties. Defendant again relies on *Bona* for the proposition that the applicable provisions of the Uniform Commercial Code ("UCC"), §§ 2-313 (express warranties) and 2-315 (implied warranties), "are limited only to the sale of goods," thus making Plaintiff's "failure to plead that there was a sale of goods" "fatal to Plaintiff's claim that Defendant provided an express warranty that the tubes and other equipment would be free of defects." (ECF No. 10-1 at 4–5). Defendant's argument is as unpersuasive as its first.

Defendant is correct that *Bona* explicitly held that "The express warranty provisions of s 2-313 and the warranty of fitness implied by s 2-315 are parts of Article 2 of the UCC, which is clearly limited to the sales of goods." 264 Md. at 72–73. But just as *Bona*'s conclusion regarding the applicability of strict products liability has changed over time, so has Maryland law regarding whether a lessor may be subject to liability for breaching express and/or implied warranties. With respect to breach of express warranties, Md. Code Ann., Com. Law § 2A-210 states unequivocally that

> (1) Express warranties by the *lessor* are created as follows:
>
> (a) Any affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods will conform to the description.
> (c) Any sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods will conform to the sample or model.

> (2) It is not necessary to the creation of an express warranty that the lessor use formal words, such as "warrant" or "guarantee", or that the lessor have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the lessor's opinion or commendation of the goods does not create a warranty.

(emphasis added). And with respect to breach of implied warranties, Md. Code Ann., Com. Law § 2A-213 provides that

> Except in a finance lease, if the *lessor* at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose.

(emphasis added). Defendant's argument is thus unpersuasive given that Maryland law unambiguously provides that causes of action for alleged breach of express and/or implied warranties applies to both sellers and lessors of goods. *See also Bolton v. Queen*, No. 71, Sept. Term, 2020, 2021 WL 1426787, at *8 (Md. Ct. Spec. App. Apr. 15, 2021) ("Express warranties apply to the sale *or lease* of goods.") (emphasis added).

Also similar to Defendant's argument in support of dismissal of Count II, Defendant attempts to couch a new argument in its Reply. Specifically, Defendant alleges for the first time in its Reply that "Plaintiff fails to plead sufficient facts to establish that the use of the inflatable tube constitutes a 'lease' under Maryland Law to fall within the ambit of § 2A-210." (ECF No. 17 at 1–2). The Court declines to consider this argument for the same reason enumerated above: should Defendant have wished to contest the sufficiency of Plaintiff's allegation that Defendant was a lessor and/or bailor of the inflatable tube, Defendant should have done so initially in its Motion such that Plaintiff was afforded an opportunity to respond to that argument. Defendant may not blindside Plaintiff with an argument that it was forced to retreat to once Plaintiff provided ample law

discrediting Defendant's initial argument. Accordingly, Defendant's Motion is also denied to the extent that it seeks dismissal of Count III of Plaintiff's Complaint for breach of express and implied warranties.

## IV. CONCLUSION

For the reasons stated above, Defendant's Partial Motion to Dismiss Plaintiff's Complaint (ECF No. 10) is hereby **DENIED**.

Date: January 4, 2024

/s/
J. Mark Coulson
United States Magistrate Judge